Michael R. Mushkin, NV Bar No. 2421
L. Joe Coppedge NVBar No. 4954
**MUSHKIN & COPPEDGE**
6070 S. Eastern Avenue, Suite 270
Las Vegas, Nevada 89119
Telephone: 702-386-3999
Facsimile: 702-454-3333
michael@mccnvlaw.com
jcoppedge@mccnvlaw.com

Cabrach J. Connor (TX Bar No. 24036390) – Pro Hac Vice Pending
Jennifer Tatum Lee (TX Bar No. 24046950) – Pro Hac Vice Pending
John M. Shumaker (TX Bar No. 24033069) – Pro Hac Vice Pending
**CONNOR LEE & SHUMAKER PLLC**
609 Castle Ridge Road, Suite 450
Austin, Texas 78746
Telephone: 512-646-2060
Facsimile: 888- 387-1134
Cab@CLandS.com
Jennifer@CLandS.com
John@CLandS.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| FORTUNA IP, LLC, a Texas limited-liability company; | Case No.: |
| Plaintiff, | |
| vs. | |
| FERTITTA ENTERTAINMENT, LLC, a Nevada limited liability Company, GN NV HOLDINGS, LLC, a Nevada limited liability company, GOLDEN LANDRY'S, LLC, a Texas limited liability company (GOLDEN NUGGET LAKE TAHOE HOTEL AND CASINO), GNLV, LLC D/B/A GOLDEN NUGGET LAS VEGAS HOTEL & CASINO, a Nevada limited liability company, AND GNL, LLC D/B/A GOLDEN NUGGET LAUGHLIN HOTEL & CASINO, a Nevada limited liability company; | **COMPLAINT** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

**COMPLAINT AND JURY DEMAND**

Plaintiff Fortuna IP, LLC ("Fortuna IP") brings this action against Fertitta Entertainment, LLC ("Fertitta"); Golden Landry's, LLC ("Golden Landry's"); GN NV Holdings, LLC ("GN NV Holdings"), GNLV, LLC d/b/a Golden Nugget Las Vegas Hotel & Casino ("GNLV"), GNL, LLC d/b/a Golden Nugget Laughlin Hotel & Casino ("GNL"); Golden Nugget Lake Tahoe Hotel & Casino ("GNLT") (collectively, "Defendants") for infringement of U.S. Patent Nos. 8,529,342, 8,641,522 and 10,607,441, and alleges the following:

**THE PARTIES**

1.      Fortuna IP, LLC, is a Texas Limited Liability Company with its principal place of business in Allen, Texas.

2.      Defendant Fertitta Entertainment, LLC is a Nevada limited liability company located at 1510 West Loop South, Houston, TX 77027. Fertitta is a national entertainment and gaming company principally engaged in the ownership and operation of Golden Nugget gaming facilities. Fertitta Entertainment, LLC may be served with process by serving its registered agent CT Corporation located at 701 S Carson St Suite 200, Carson City, NV 89701.

3.      Defendant Golden Landry's, LLC is a Texas limited liability company located at 1510 West Loop South, Houston, TX 77027 and is a co-owner and operator of GNLT. Golden Landry's may be served with process by serving its registered agent CT Corporation located at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

4.      Defendant GN NV Holdings, LLC is a Nevada limited liability company located at 1510 West Loop South, Houston, TX 77027. GN NV Holdings is a subsidiary of Fertitta. GN NV Holdings is a holding company and operator of Golden Nugget Casinos. GN NV Holdings, LLC may be served with process by serving its registered agent CT Corporation located at 701 S Carson St Suite 200, Carson City, NV 89701.

5.      Defendant GNLV, LLC d/b/a Golden Nugget Las Vegas Hotel & Casino (GNLV) is a Nevada limited liability company located at 129 Fremont St, Las Vegas, NV 89101. GNLV, LLC d/b/a Golden Nugget Las Vegas Hotel & Casino (GNLV) may be served with process by serving its registered agent CT Corporation located at 701 S Carson St Suite 200, Carson City,

NV 89701.

6.      Defendant GNL, LLC d/b/a Golden Nugget Laughlin Hotel & Casino (GNL) is a Nevada limited liability company located at 2300 South Casino Drive, Laughlin, NV 89029. GNL, LLC d/b/a Golden Nugget Laughlin Hotel & Casino (GNL) may be served with process by serving its registered agent CT Corporation located at 701 S Carson St Suite 200, Carson City, NV 89701.

7.      Defendant Golden Nugget Lake Tahoe Hotel & Casino is located at 50 Hwy 50, Stateline, NV 89449. Upon information and belief, GN NV Holdings and Golden Landry's are co-owners and operators of GNLT Casino.

8.      Defendants manufacture, make, use, offers to sell, sell, license, and/or import into the United States gaming machines, systems, software, and related services, including gaming products offered under the Ainsworth, Aristocrat Technologies, Aruze Gaming, Bally, Caesars Entertainment, Everi, Gaming Arts, IGT, Konami, and Light & Wonder brands, as well as other similar brands and products, all of which infringe Fortuna IP's patent claims.

9.      Defendants own and operates the Golden Nugget Hotel and Casino in Las Vegas, Nevada, Lake Tahoe, Nevada, Laughlin, Nevada; Atlantic City, New Jersey; Biloxi, Mississippi; Cripple Creek, Colorado; Danville, Illinois, and Lake Charles, Louisiana (collectively referred to as "Golden Nugget"). Through these casinos, Defendant makes available for play and distributes to its patrons and customers gaming products and software containing features that infringe the asserted patents to customers throughout the United States, including within this district.

## JURISDICTION AND VENUE

10.     Fortuna IP brings this action for patent infringement under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1400 and 1391(b)(1) and (b)(2) because each Defendant is a resident of Nevada and/or has a regular and established place of business and committed acts of infringement in this judicial district.

12.     Each Defendant is subject to this Court's specific and general personal jurisdiction

pursuant to the Nevada Long-Arm Statute and consistent with due process, in view of its substantial business in Nevada and in this judicial district including: (a) its infringing activities alleged in this complaint by which each Defendant purposefully avails itself of the privilege of conducting business activities in this state and district, and thus, submits itself to the jurisdiction of this Court; and (b) regularly doing or soliciting business, contracting with and engaging in other persistent conduct targeting residents of Nevada and this district, or deriving substantial revenue from goods and services offered for sale, sold, and imported to and targeting residents of Nevada and this district directly and through or in concert with intermediaries, agents, distributors, importers, customers, subsidiaries and/or consumers. Defendants transact business in this judicial district and have committed acts of infringement in this judicial district.

13.     This Court has personal jurisdiction over Defendants, directly and/or indirectly via the activities of Defendants' and/or their intermediaries, agents, related entities, affiliates, distributors, importers, customers, subsidiaries, or consumers. Alone and in concert with these entities, Defendants have committed acts of direct and/or indirect patent infringement within Nevada, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Nevada.

**FORTUNA IP**

14.     Fortuna IP owns a portfolio of patents invented by Elia Rocco Tarantino and Sam Johnson. Since acquiring the gaming-centric portfolio, Fortuna IP has promoted adoption of technologies claimed in the portfolio and has been cited by established and well-known gaming companies, such as Caesars Entertainment, Aristocrat Technologies, and IGT.

15.     Fortuna IP asserts that Defendant infringes, directly and indirectly, certain claims of U.S. Patent Nos. 8,529,342 (the "'342 Patent"); 8,641,522 (the "'522 Patent"); and 10,607,441 (the "'441 Patent") (the "Fortuna IP Asserted Patents").

**ASSERTED FORTUNA IP PATENTS**

16.     The Fortuna IP Asserted Patents claim inventions born from the ingenuity of Sam Johnson and Elia Rocco Tarantino.

17.     Elia Rocco Tarantino is the inventor of the '342 Patent and the '522 Patent.

The '342 Patent introduced an innovative system that links casino gaming machines with player information by assigning devices to individual players, verifying their identity, and tracking rewards through a centralized platform. Elia's invention advanced traditional slot machines by providing the framework for individual player tracking and interaction.



FIG. 1



FIG. 2

FIG. 3



FIG. 4



FIG. 5



5/5

REGISTER PLAYERS — S1

ASSIGN GAME — S2

PROVIDE LOGIN — S3

**FIG. 6A**

PLAYER PROVIDES LOGIN — S4

S5

VERIFY LOGIN — NO → END — S6

YES

LINK TO ASSIGNED GAME — S7

PRESENT GAME — S8

**FIG. 6B**

| PLAYER NAME | ID | PASSWORD | GAMING DEVICE |
|---|---|---|---|
| ROCCO TARANTIINO | RT4216 | LASVEGAS | 2XF7114GK21 |
| ⋮ | ⋮ | ⋮ | ⋮ |

**FIG. 6C**

18.     The '522 Patent disclosed multi-player electronic table games managed by a centralized game server, enabling player verification, queueing, and random assignment of players to shared games. The combination of gaming device assignments with centralized game management in the '522 patent was a technological advancement for multi-player electronic gaming.



FIG. 1



FIG. 2

FIG. 3



FIG. 4



FIG. 5







19.    Sam Johnson is the inventor of the '441 Patent. This patent marked a significant advancement in gaming technology by introducing a secondary game controller to electronic gaming machines. Prior systems were closed loop and manufacturer-specific, limiting casinos' ability to offer consistent features across their floors. Johnson's invention allowed casinos to unify rewards systems across different games and manufacturers and to display rewards directly on the primary game screen. It also enabled players to accrue reward points across multiple machines and locations through a single account.

20.    The system introduced functionality that electronic gaming machines had not previously offered. Rather than tracking only general session play, it could capture every spin and outcome, giving casinos the ability to award players for winning, losing, or other defined incentives. For players, the technology expanded their opportunities by allowing them to move between multiple games on a single machine and earn rewards in all new ways. The '441 patent enabled casinos to use a secondary controller to refresh and expand their gaming content, adding virtually unlimited games seamlessly. By enabling secondary wagers, progressive jackpots, bonus rounds, advertising, and integrated reward systems all on one screen, the '441 Patent disrupted the gaming industry and fundamentally reshaped both the player experience and casino operations.



FIG. 1



FIG. 2



FIG. 3



**FIG. 4**



**FIG. 5**



**FIG. 6**



**FIG. 7**

**THE ACCUSED PRODUCTS**

21.    The term "Accused Products" includes, without limitation, Defendants' casino gaming machines integrated with its reward systems, such as the 24K Select Rewards program, its multi-player electronic poker gaming systems linked through a centralized poker server, and electronic gaming machines incorporating secondary controllers providing secondary gaming functionality. The Accused Products include, without limitation, electronic gaming machines provided by Defendants, including its Ainsworth, Aristocrat Technologies, Aruze Gaming, Bally, Caesars Entertainment, Everi, Gaming Arts, IGT, Konami, and Light & Wonder brands, as well as other similar brands and products that are integrated with its 24K Select Rewards program. As discussed below, these products and systems practice each and every limitation of one or more claims of the Asserted Patents.



https://www.youtube.com/watch?v=e1PoOi0DCLs

## NOTICE OF FORTUNA IP ASSERTED PATENTS

22.    Fortuna IP contacted Defendants on January 28, 2025, and March 25, 2025, regarding licensing the Fortuna IP Asserted Patents. Additionally, Fortuna IP contacted Defendants on February 18, 2025, and again on March 21, 2025. Defendants thus received notice that it infringed U.S. Patent Nos. 8,529,342; 8,641,522; and 10,607,441.

## COUNT 1

## INFRINGEMENT OF U.S. PATENT NO. 8,529,342

23.     Fortuna IP realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

24.     Fortuna IP is the owner, by assignment, of U.S. Patent No. 8,529,342. The '342 Patent was issued by the United States Patent and Trademark Office on September 10, 2013.

25.     As the owner of the '342 Patent, Fortuna IP holds all substantial rights in and under the '342 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

26.     The '342 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

27.     Fortuna IP alleges that Defendants have infringed and continue to infringe at least claims 1, 2, 7, 9, 10 and 13 of the '342 Patent by making, using (including its own testing), offering to sell, selling, distributing, licensing and/or importing the Accused Products and all other similar products containing features that infringe the claims of the '342 Patent without authorization or license, as exemplified below.

28.     The Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '342 Patent and feature structures and/or functionality as shown below.

29.     Defendants have used and tested the Accused Products in the United States.

30.     Defendants thus have infringed and continue to infringe the '342 Patent.

31.     Defendants activities have been and continue without authority of license under the '342 Patent.

32.     Defendants users, customers, agents and/or other third parties (collectively, "third-party infringers") have infringed and continue to infringe the asserted claims under 35 U.S.C. § 271(a) by using, making, selling, offering for sale, licensing, and/or importing the Accused Products according to their normal and intended use.

33.     The Accused Products satisfy each and every element of each asserted claim of

the '342 Patent either literally or under the doctrine of equivalents.

34.    Claim 1 recites:

A method of presenting a game to a player comprising:

providing a plurality of gaming devices and assigning one of said gaming devices to

said player for exclusive play by said player;

storing player identification information in association with information which

identifies said gaming device assigned to said player;

receiving player identification information from a presentation device of said player;

verifying said player identification information;

if said player identification information is verified, establishing a communication

link between said player's presentation device and said gaming device assigned

to said player;

generating game information at said gaming device; and

transmitting said gaming information from said gaming device to said player's

presentation device via said communication link.

35.    As shown below, the Accused Products perform a method that presents a game to

a player.

36.    For example, Defendants' casino gaming systems that integrate the 24K Select

Rewards program within its electronic gaming devices allow players to identify themselves with

a Rewards card.







37.    The Accused Products when executing perform a method that provides a plurality of gaming devices and assigns one of the devices to the player for exclusive play.

38.    For example, Defendants offer electronic gaming devices on the casino floor, each integrated with the 24K Select Rewards system. When a player inserts their 24K Select Rewards card into a device, the system assigns that particular gaming device to the player for exclusive play.






Golden Nugget Lake Charles, Louisiana (https://www.instagram.com/goldennuggetlc/)



Golden Nugget Atlantic City, New Jersey (https://www.instagram.com/goldennuggetac/)

39.     The Accused Products when executing stores player identification information in association with information identifying the gaming device assigned to the player.

40.     For example, the Accused Products store the player's identification information (*e.g.* magnetic stripe information) in association with information that identifies the gaming device assigned to the player. The player accrues rewards points based on the activity of the gaming device.

41.     The Accused Products when executing receives player identification information, and if the player identification information is verified, establishes a communication link between the player's presentation device and the gaming device assigned to the player.

42.     For example, Defendants' electronic gaming devices include 24K Select Rewards card readers and a server that receives the player identifying information from the insertion of the player's rewards card into the terminal of an Accused gaming device Product. The server verifies

the player identification information and establishes a link between the rewards terminal and the gaming machine to display 24K Select rewards point accrual.





Golden Nugget Biloxi, Mississippi (https://www.instagram.com/goldennuggetbx/)

43.    The Accused Products, when executing, verify the player identification information (*e.g.* magnetic stripe information) and once verified, establish a communication link between the player's presentation device (*e.g.* Rewards card) and the assigned gaming device.

44.    For example, the server of Defendants' electronic gaming devices verifies the player identification information and establishes a link between the rewards terminal and the gaming device to display 24K Select rewards point accrual.

45.    The Accused Products when executing generate game information at the assigned gaming device.

46.    For example, Defendants' electronic gaming devices generate game information (*e.g.* wager amounts, accrued points) during the player's dedicated instance that is linked through the 24K Select Rewards system.





Golden Nugget Atlantic City, New Jersey (https://www.instagram.com/goldennuggetac/)

47.   The Accused Products transmit the generated game information from the gaming device to the player's presentation device via a communication link for presentation to the player.

48.   For example, Defendants' electronic gaming devices transmit gaming information (*e.g.* wager amount) from a gaming device to the rewards terminal to display 24K Select rewards points accrued as a result of game play.



49.    Defendants were provided with notice of the '342 Patent and how it infringes at least claim 1 no later than March 25, 2025. Defendants' knowledge of the '342 Patent, which covers operating the Accused Products used as intended such that all limitations of the asserted claims of the '342 Patent are met, extends to its knowledge that the third-party infringers' use of the Accused Products that directly infringes the '342 Patent, or, at the very least, rendered Defendants willfully blind to such infringement.

50.    Defendants have, since at least as early as March 25, 2025, known or been willfully blind to the fact that the third-party infringers' use of the Accused Products directly infringes the '342 Patent.

51.    With knowledge of or willful blindness to the fact that the third-party infringers' use of the Accused Products in their intended manner such that all limitations of the asserted claims of the '342 Patent are met directly infringes the '342 Patent, Defendants have actively encouraged the third-party infringers to directly infringe the '342 Patent by using the Accused Products by, for example: providing use of electronic gaming devices that integrate the 24K Select Rewards program; promoting and encouraging use of the 24K Select Rewards card to assign players to specific gaming devices for exclusive play; and supporting and managing player tracking and game play through the 24K Select Rewards system.

52.    Defendants induce the third-party infringers to infringe the asserted claims of the '342 Patent by directing or encouraging them to operate or use the Accused Products which satisfy all limitations of the asserted claims of the '342 Patent. Defendant's advertise and promote the use of the 24K Select Rewards program and its integration with electronic gaming devices and encourage players and operators to use those systems in the intended infringing manner.

53.    In response, the third-party infringers operate or use the Accused Products in an infringing manner.

54.    Defendants specifically intend to induce, and did induce, the third-party infringers to infringe the asserted claims of the '342 Patent, and Defendants knew of or was willfully blind to such infringement.

55.    Defendants advise, encourage, and/or aid the third-party infringers to directly infringe by operating and promoting the use of the Accused Products, including the 24K Select Rewards program integrated gaming machines, in a manner that satisfies all limitations of the asserted claims of the '342 Patent. With knowledge of, or willful blindness to, the fact that third-party infringers' use of the Accused Products in their intended manner directly infringes the '342 Patent, Defendants actively encourage and induce such infringement by marketing the Accused Products and supporting and managing their use.

56.    Defendants have induced and continue to induce infringement of the '342 Patent under 35 U.S.C. § 271(b).

57.    Defendants' continuing acts of infringement of the '342 Patent are carried out with knowledge of the '342 Patent and how the Accused Products infringe them. Rather than take a license to the '342 Patent, Defendants' ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).

58.    Defendants' acts of direct and indirect infringement have caused and continue to cause damage to Fortuna IP for which Fortuna IP is entitled to recover damages sustained as a result of Defendant's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant

to 35 U.S.C. § 284.

**COUNT 2**

**INFRINGEMENT OF U.S. PATENT NO. 8,641,522**

59.     Fortuna IP realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

60.     Fortuna IP is the owner, by assignment, of U.S. Patent No. 8,641,522. The '522 Patent was issued by the United States Patent and Trademark Office on February 4, 2014.

61.     As the owner of the '522 Patent, Fortuna IP holds all substantial rights in and under the '522 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

62.     The '522 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

63.     Defendants have infringed and continue to infringe at least claims 1, 6, 7, 8 and 9 of the '522 Patent by making, using (including its own testing), offering to sell, selling, distributing, licensing and/or importing the Accused Products and all other similar products containing features that infringe the claims of the '522 Patent without authorization or license, as exemplified below.

64.     The Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '522 Patent and feature structures and/or functionality as shown below.

65.     Defendants have used and tested the Accused Products in the United States.

66.     Defendants have infringed and continue to infringe the '522 Patent.

67.     Defendants activities were without authority of license under the '522 Patent.

68.     Defendants' users, customers, agents and/or other third parties (collectively, "third-party infringers") have infringed and continue to infringe the asserted claims under 35 U.S.C. § 271(a) by using, making, selling, offering for sale, licensing, and/or importing the Accused Products according to their normal and intended use.

69.     The Accused Products satisfy each and every element of each asserted claim of

1 | the '522 Patent either literally or under the doctrine of equivalents.

2 | 70. Claim 1 recites:

3 | A method of presenting a multi-player online game to at least two players

4 | comprising the steps of:

5 | assigning a gaming device to each player;

6 | storing player identification information in association with information which

7 | identifies said gaming device assigned to said player;

8 | receiving player identification information from a presentation device of each

9 | player;

10 | verifying said player identification information;

11 | if said player identification information is verified, establishing a

12 | communication link between said player's presentation device and said

13 | gaming device assigned to said player;

14 | linking said player's gaming device to a game server;

15 | placing each linked player into a game queue;

16 | randomly assigning each player in said game queue to an instance of an on-

17 | line game generated by said game server;

18 | relative to each game instance, generating game information at said game

19 | server regarding a game; and

20 | transmitting said game information regarding said player's assigned game

21 | instance from said game server through each player's gaming device to

22 | said player's presentation device via said communication link.

23 | 71. The Accused Products when executing, include a method that presents a multi-

24 | player online game to at least two players.

25 | 72. For example, Defendants operate electronic poker machines, slots machines, and

26 | other gaming devices for use by its patrons. These terminals are linked through a centralized game

27 | server, allowing multiple players to participate in the same game instance while tracked through

28 | the 24K Select Rewards program.

**COME PLAY THE HOTTEST SLOTS IN LAS VEGAS**
.

You'll find the best slot action in Vegas at the Golden Nugget. We feature the latest on our expansive casino floor, including Wheel of Fortune 3D, Buffalo Grand, Top Dollar and more. And check out our progressive machines offering some of the largest jackpots in Las Vegas! Our variety is unbeatable — choose to play more than approximately 1,000 new slot and video poker machines, from just one cent.

https://www.goldennugget.com/las-vegas/casino/slot-machines/



https://www.yelp.com/biz_photos/claudes-bar-las-vegas?select=wOsiSW_oxKS2Vv4YLsndLA

73.    The Accused Products when executing (*e.g.,* electronic gaming devices, video poker machines) assign a gaming device to each player.

74.    For example, an electronic poker terminal is assigned to a player when the player inserts their 24K Select Rewards card into the terminal, linking that machine to the player for the duration of the game instance.





Golden Nugget Lake Charles, Louisiana (https://www.instagram.com/goldennuggetlc/)





Golden Nugget Lake Tahoe, California (https://www.instagram.com/goldennuggetlt/)

75.    The Accused Products when executing store player identification information in association with information identifying the gaming device assigned to the player.

76.    For example, the rewards system stores player identification information (*e.g.* magnetic stripe information or rewards ID number) in association with the gaming devices identifying information (*e.g.* ID, serial number, or mac address). The rewards system that is connected to the gaming machine is updated as 24K Select Rewards points accrue from game play at a gaming machine, linking the player's account to that specific device.






Golden Nugget Biloxi, Mississippi (https://www.instagram.com/goldennuggetbx/)

77.    The Accused Products when executing receive player identification information from a presentation device of each player.

78.    For example, when a player inserts their 24K Select Rewards card into an electronic poker machine, the server receives player identification information from the rewards terminal of the gaming machine.





Golden Nugget Biloxi, Mississippi (https://www.instagram.com/goldennuggetbx/)

79.    The Accused Products verify player identification information and, if verified, establish a communication link between the player's presentation device and the gaming device assigned to that player.

80.    For example, the server verifies the player identification information and establishes a communication link between the rewards terminal and the gaming machine, allowing the gaming machine to display the player's accrual of 24K Select Rewards points in connection with their gameplay.

https://www.goldennugget.com/24k-select-club-faq/

81.    The Accused Products when executing link each player's gaming device to a game server, place the linked players into a game queue, and randomly assign each player in the queue to an instance of an online game generated by the game server.

82.    For example, the Defendants' gaming machines are linked to a centralized game server for shared progressive jackpot. Each player is queued or queried for and randomly assigned to an instance of the shared progressive jackpot game. As one example, two players that both win the shared progressive jackpot are awarded based on their position in the queue (*e.g.,* one would win the full amount, and another would win a reduced amount).





Golden Nugget Lake Charles, Louisiana (https://www.instagram.com/goldennuggetlc/)



83.    Golden Nugget Danville, Illinois (https://www.instagram.com/gndanville/)The Accused Products, when executing, relative to each game instance, generate game information at the game server and transmit that game information regarding the player's assigned game instance from said game server through the player's gaming device to the player's presentation device via the established communication link.

84.    For example, for each game instance, the centralized game server generates game information (*e.g.,* acknowledgement of a wager and an awarding of rewards points) and transmits that information to the presentation device through the gaming machine via the communication link.





Golden Nugget Laughlin, Nevada (https://www.instagram.com/goldennuggetlaughlin/)



Golden Nugget Biloxi, Mississippi(https://www.instagram.com/goldennuggetbx/)

85.    Defendants have, since at least as early as March 25, 2025, known or been willfully blind to the fact that the third-party infringers' use of the Accused Products directly infringes the '522 Patent.

86.    With knowledge of or willful blindness to the fact that the third-party infringers' use of the Accused Products in their intended manner such that all limitations of the asserted claims of the '522 Patent are met directly infringes the '522 Patent, Defendants have actively encouraged the third-party infringers to directly infringe the '522 Patent by using the Accused Products by, for example: Defendants market and operate electronic gaming machines that allow multiple players to participate in the same game instance from individual gaming devices, verifies and assigns players through the 24K Select Rewards program, track player identification and gameplay data through that system, and link those machines through a centralized game server.

87.    Defendants induce third-party infringers to infringe the asserted claims of the '522 Patent by directing or encouraging them to operate or use the Accused Products which satisfy all

limitations of the asserted claims of the '522 Patent. Defendants advertise and promote the features of the Accused Products, including linked multi-player electronic poker, verification and assignment through the 24K Select Rewards system, and encourage the third-party infringers to operate the systems in an infringing manner.

88.    In response, the third-party infringers use or operate the Accused Products in an infringing manner.

89.    Defendants specifically intend to induce, and did induce, the third-party infringers to infringe the asserted claims of the '522 Patent, and Defendants knew of or was willfully blind to such infringement. Defendants advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through its encouragement, advice, and assistance to the third-party infringers to use the linked multi-player poker with verification and assignment through the 24K Select Rewards system. Having known or been willfully blind to the fact that the third-party infringers' use of the Accused Products in their intended manner satisfied all limitations of the asserted claims of the '522 Patent, Defendants actively encouraged and induced such infringement by marketing the Accused Products and supporting and managing their use and operation on the casino floor.

90.    Defendants have induced and continue to induce infringement of the asserted claims of the '522 Patent under 35 U.S.C. § 271(b).

91.    Defendants' continuing acts of infringement of the '522 Patent since notice of this patent, have been and are continuing to be carried out with knowledge of the asserted claims of the '522 Patent and how the Accused Products infringe them. Rather than take a license to the '522 Patent, Defendants' ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).

92.    Defendants' acts of direct and indirect infringement have caused and continue to cause damage to Fortuna IP for which Fortuna IP is entitled to recover damages sustained as a result of Defendants' infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant

to 35 U.S.C. § 284.

## COUNT 3

### INFRINGEMENT OF U.S. PATENT NO. 10,607,441

93.     Fortuna IP realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

94.     Fortuna IP is the owner, by assignment, of U.S. Patent No. 10,607,441. The '441 Patent was issued by the United States Patent and Trademark Office on March 31, 2020.

95.     As the owner of the '441 Patent, Fortuna IP holds all substantial rights in and under the '441 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

96.     The '441 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

97.     Defendants have infringed, and continue to infringe, at least claim 1, 7, 9, 12 and 19 of the '441 Patent by making, using (including its own testing), offering to sell, selling, distributing, licensing, and/or importing the Accused Products and all similar products that infringe the '441 Patent without authorization or license as exemplified below.

98.     The Accused Products are designed, manufactured, and intended to be used in normal operation to practice the '441 Patent and feature structures and/or functionality as shown below.

99.     Defendants have used and tested the Accused Products in the United States.

100.    Defendants have infringed and continue to infringe the '441 Patent.

101.    Defendants activities were without authority of license under the '441 Patent.

102.    The Accused Products satisfy each and every limitation of each asserted claim of the '441 Patent either literally or under the doctrine of equivalents.

103.    Claim 1 recites an embodiment of the claimed subject matter:

A modified gaming machine comprising:

a plurality of gaming machine peripheral devices including at least one

electronic video display and at least one player input device;

a main game controller configured to implement a primary wagering game based upon a primary wager placed by a player of said gaming machine using said at least one player input device, said main game controller transmitting primary wagering game information to said at least one electronic video display for display and configured to award a primary award based upon a winning outcome of said primary wagering game as defined by a paytable of one or more winning outcomes and associated awards; and

a secondary hardware controller added to the gaming machine to modify the gaming machine to present secondary gaming functionality, the secondary hardware controller interposed between one or more of said plurality of gaming machine peripheral devices and said main game controller, said secondary hardware controller configured to implement secondary gaming functionality comprising player rewards functionality comprising the award of one or more non-monetary value reward points to said player.

104.    The Accused Products are modified gaming machines.

105.    For example, Defendants' casino electronic gaming machines are modified to include reward terminals.

 

Golden Nugget Las Vegas, Nevada (https://www.instagram.com/goldennuggetlv/)

106.    The Accused Products include a plurality of gaming machines peripheral devices including at least one electronic video display and at least one player input device.

107.    For example, Defendants' electronic gaming machines include video displays (that present, for example, slot reels or bonus rounds) and input devices (such as buttons and touchscreens).



Golden Nugget Las Vegas, Nevada (https://www.instagram.com/goldennuggetlv/)







Golden Nugget Cripple Creek, Colorado (https://www.instagram.com/goldennuggetcc/)





Golden Nugget Atlantic City, New Jersey (https://www.instagram.com/goldennuggetac/)



108.    The Accused Products include a main game controller configured to implement a primary wagering game based upon a primary wager placed by a player of said gaming machine using said at least one player input device, said main game controller transmitting primary wagering game information to said at least one electronic video display for display and configured to award a primary award based upon a winning outcome of said primary wagering game as defined by a paytable of one or more winning outcomes and associated awards

109.    For example, Defendants' gaming machines have a main game controller for implementing a wagering game the player chooses, based upon a player's wager denomination (*e.g.*, 1¢, 2¢, etc.). The player can place the wager using the touchscreen or physical buttons. The main game controller transmits the wagering information to the video display for display and is configured to award money based on a winning outcome of the game as defined by a paytable of winning outcomes and awards. Each wager denomination has an associated paytable of winning outcomes.



Golden Nugget Las Vegas, Nevada (https://www.instagram.com/goldennuggetlv/)



Golden Nugget Biloxi, Mississippi (https://www.instagram.com/goldennuggetbx/)



Golden Nugget Atlantic City, New Jersey (https://www.instagram.com/goldennuggetac/)



110.    The Accused Products include a secondary hardware controller added to the gaming machine to modify the gaming machine to present secondary gaming functionality, the secondary hardware controller interposed between one or more of said plurality of gaming machine peripheral devices and said main game controller, said secondary hardware controller configured to implement secondary gaming functionality comprising player rewards functionality comprising the award of one or more non-monetary value reward points to said player.

111.    For example, Defendants' gaming machines are examples of electronic gaming machines that have a secondary hardware controller added to the gaming machine to modify the gaming machine to present 24K Select rewards points accrual.

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15  Golden Nugget Biloxi, Mississippi (https://www.instagram.com/goldennuggetbx/)
16
17
18
19




20
21
22
23
24
25
26
27
28  Golden Nugget Lake Tahoe, California (https://www.instagram.com/goldennuggetlt/)



112.    The Accused Products also award non-monetary value reward points based upon primary wagering game play.

113.    Defendants' electronic gaming machines award 24K Select Points based on monetary increments of game play on the gaming machines.



Become a 24K Select Club member and earn golden rewards and casino comps! When you play slots and table games with your Golden Nugget 24K Select Club card, you earn multiple rewards:

- **Tier Credits** | Advance in our four tiers: 24 Karat, Premier, Chairman and Elite
- **Comps** | Redeemable for food, retail purchases, and hotel rooms
- **Slot Points** | Redeemable for free play (Slot Points are earned through slot play only)

https://www.goldennugget.com/las-vegas/casino/24k-select-club/

114. Fortuna IP notified Defendants that they infringe the '441 Patent no later than March 25, 2025.

115. Defendants' knowledge of the '441 Patent, which covers operating the Accused Products in their intended manner such that all limitations of the asserted claims of the '441 Patent are met, extends to its knowledge that the third-party infringers' use or operation of the Accused Products directly infringes the '441 Patent, or, at the very least, rendered Defendants willfully blind to such infringement.

116. With knowledge of, or willful blindness to, the fact that third-party infringers' use or operation of the Accused Products in their intended manner results in performance of each and every limitation of the asserted claims of the '441 Patent, Defendants have actively encouraged such infringement. Defendants have promoted and supported the third-party infringers' direct infringement of the '441 Patent by providing for use or operation the Accused Products. For example, Defendants market casino gaming machines equipped with secondary controllers that provide secondary gaming functionality in response to secondary wagers; promote features such as progressive jackpots, bonus features, and non-monetary rewards; and support and manages the operation of those features on the casino floor.

117. Defendants induce third-party infringers to infringe the asserted claims of the '441 Patent by directing or encouraging them to operate or use the Accused Products which satisfy all limitations of the asserted claims of the '441 Patent. Defendants advertise and promote the secondary wagering features of the Accused Products and encourages third-party infringers to operate the machines in an infringing manner.

118. In response, the third-party infringers acquire and operate the Accused Products in

an infringing manner.

119.    Defendants specifically intend to induce, and did induce, the third-party infringers to infringe the asserted claims of the '441 Patent, and Defendants knew of or was willfully blind to such infringement. Defendants advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through its encouragement, advice, and assistance to the third-party infringers to use the secondary gaming functionality of the Accused Products and reward points accumulation. Having known or been willfully blind to the fact that the third-party infringers' use of the Accused Products in their intended manner such that all limitations of asserted claims of the '441 Patent were met directly infringed the '441 Patent, Defendants actively encouraged and induced the third-party infringers to directly infringe the '441 Patent operating or using, the Accused Products, and by, for example: marketing the Accused Products to the third-party infringers and supporting and managing their use on the casino floor.

120.    Based upon the foregoing facts, among other things, Defendants have induced and continues to induce infringement of the asserted claims of the '441 Patent under 35 U.S.C. § 271(b).

121.    Defendants' continuing acts of infringement of the '441 Patent are carried out with knowledge of the asserted claims of the '441 Patent and how the Accused Products infringe them. Rather than take a license to the '441 Patent, Defendants' ongoing infringing conduct reflects a business decision to "efficiently infringe" the asserted claims and in doing so constitutes willful infringement under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).

122.    Defendants' acts of direct and indirect infringement have caused and continue to cause damage to Fortuna IP for which Fortuna IP is entitled to recover damages sustained as a result of Defendants' infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## NOTICE

### NOTICE OF REQUIREMENT OF LITIGATION HOLD

123.    Defendants are hereby notified it is legally obligated to locate, preserve, and

maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Defendants know, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereafter collectively referred to as "Potential Evidence").

124.    As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, video cameras and still cameras, and any and all other locations where electronic data is stored. These sources may also include any personal electronic, digital, and storage devices of any and all of Defendant's agents, resellers, distributors or employees if Landry's electronically stored information resides there.

125.    Defendants are hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Defendants' claims and/or defenses. To avoid such a result, Defendants' preservation duties include, but are not limited to, the requirement that Defendants immediately notify its agents, distributors, and employees to halt and/or supervise the auto-delete functions of Defendants' electronic systems and refrain from deleting Potential Evidence, either manually or

through a policy of periodic deletion.

## JURY DEMAND

Fortuna IP hereby demands a trial by jury on all claims, issues, and damages so triable.

## PRAYER FOR RELIEF

Fortuna IP prays for the following relief:

1)    That Defendants be summoned to appear and answer;

2)    That the Court enter judgment that Defendants have infringed the '342, '522 and '441 Patents.

3)    That the Court grant Fortuna IP judgment against Defendants for all actual, consequential, special, punitive, increased, and/or statutory damages, including, if necessary, an accounting of all damages; pre- and post-judgment interest as allowed by law; and reasonable attorney's fees, costs, and expenses incurred in this action;

4)    That Defendants infringement be found to have been willful;

5)    That this case be found to be exceptional under 35 U.S.C. § 285; and

6)    That Fortuna IP be granted such other and further relief as the Court may deem just and proper under the circumstances.

DATED this 17th day of September 2025.

MUSHKIN & COPPEDGE


_/s/ Michael R. Mushkin_
MICHAEL R. MUSHKIN, ESQ.
Nevada Bar No. 2421
L. JOE COPPEDGE, ESQ.
Nevada Bar No. 4954
6070 S. Eastern Avenue, #270
Las Vegas, Nevada 89119
Attorneys for Plaintiff